Alex Meggitt, OSB #174131
P.O. Box 5248
Portland, OR 97208
Email: ameggitt@ojrc.info
Telephone: (503) 563-3354

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PENDLETON DIVISION

| | |
|---|---|
| KEVIN O'DONNELL<br><br>Plaintiff,<br><br>vs.<br><br>OREGON DEPARTMENT OF CORRECTIONS, KEVIN JACKSON, NICHOLAS DERANLEAU, CLYDE G. MILLER, G. MILLER, TRAVIS HUDSON, AND TYLER MUHLBEIER,<br><br>Defendants. | Case No. 2:22-cv-1617<br><br>COMPLAINT<br><br>Civil Rights Action (42 U.S.C. § 1983) for cruel and unusual punishment in violation of the Eighth Amendment; state law negligence claim<br><br>DEMAND FOR JURY TRIAL |

This is a Civil Rights action stemming from Defendants' unconstitutional and unreasonable failure to provide Plaintiff Kevin O'Donnell with means of decontamination after he was exposed to Oleoresin Capsicum (OC) spray, a chemical agent that causes burning sensations, pain, and difficulty breathing, among other symptoms, in those exposed to it. Mr. O'Donnell was not afforded the opportunity to shower until approximately three days after he was exposed to the chemical agents. During that time, Mr. O'Donnell experienced constant pain,

a burning sensation, and difficulty breathing. As a result of Defendants' actions, Mr. O'Donnell suffered unnecessary physical and mental pain and suffering.

## JURISDICTION AND VENUE

1. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331, 1343(a)(3), (4). This Court has pendent jurisdiction over plaintiff's state law negligence claim under 28 U.S.C. § 1967.

2. Venue is proper within the District of Oregon because all of the events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). The acts and practices alleged herein occurred in Umatilla, Umatilla County, Oregon.

## PARTIES

3. Plaintiff Kevin O'Donnell is an adult who currently resides in Salem, Oregon, at the Oregon State Penitentiary. At the time of the events described in this complaint, he resided at Two Rivers Correctional Institution (TRCI) in Umatilla, Oregon.

4. At the time of the allegations made herein, Defendant Kevin Jackson was the assistant superintendent of security at TRCI. He is an employee of the State of Oregon and the Oregon Department of Corrections. At all times alleged, Defendant Jackson was acting under color of law, and is being sued in his individual capacity.

5. At the time of the allegations made herein, Defendant Nicholas Deranleau was a corrections lieutenant at TRCI. He is an employee of the State of Oregon and the Oregon Department of Corrections. At all times alleged, Defendant Deranleau was acting under color of law, and is being sued in his individual capacity.

6.     At the time of the allegations made herein, Defendant Clyde G. Miller was a corrections sergeant working at TRCI. He is an employee of the State of Oregon and the Oregon Department of Corrections.  At all times alleged, Defendant Miller was acting under color of law, and is being sued in his individual capacity.

7.     Upon information and belief, the corrections sergeant identified in reports related to the incident described in this complaint as "G. Miller" is Clyde G. Miller, described above. At the time of the allegations made herein, Defendant G. Miller was a corrections sergeant working at TRCI. In the event he is not the same person as Clyde G. Miller, Defendant G. Miller is a correctional sergeant described in TRCI Unusual Incident Report (UIR) #2020-10-00019 as deploying OC spray during a cell extraction. References to "Defendant Miller" throughout this complaint refer to both Defendants mentioned in this paragraph.  He is an employee of the State of Oregon and the Oregon Department of Corrections.  At all times alleged, Defendant Miller was acting under color of law, and is being sued in his individual capacity.

8.     At the time of the allegations made herein, Defendant Travis Hudson was a corrections officer working at TRCI. He is an employee of the State of Oregon and the Oregon Department of Corrections.  At all times alleged, Defendant Hudson was acting under color of law, and is being sued in his individual capacity.

9.     At the time of the allegations made herein, Defendant Tyler Muhlbeier was a corrections officer working at TRCI. He is an employee of the State of Oregon and the Oregon Department of Corrections.  At all times alleged, Defendant Muhlbeier was acting under color of law, and is being sued in his individual capacity

10. Defendant Oregon Department of Corrections (ODOC) is a department or division of the State of Oregon with the capacity to sue and be sued pursuant to the Oregon Tort Claims Act. Under *respondeat superior*, Defendant State of Oregon is liable in a state tort action for the actions or inactions of its agents.

## FACTUAL ALLEGATIONS

11. On October 22, 2020, Mr. O'Donnell was held in cell 144 of the Disciplinary Segregation Unit (DSU) at TRCI.

12. At approximately 9:38 PM, Defendant Miller led a "cell extraction" in a nearby cell, number 142. Defendant Miller decided to remove the inmate from cell 142 by force, as the inmate had covered the window to his cell with wet paper, and corrections staff could not see into the cell. As part of the cell extraction, Defendant Miller sprayed a large quantity of chemical agents, a powerful OC spray named "Phantom," into cell 142. Defendants Hudson and Muhlbeier were members of the cell extraction team and were aware of the planned use of chemical agents.

13. The chemical agents from cell 142 entered Mr. O'Donnell's cell. Upon information and belief, the chemicals spread because the cells share a ventilation system that cycles air through the cells.

14. Due to the exposure to those chemical agents, Mr. O'Donnell experienced pain and a burning sensation on his skin and in his eyes and lungs, difficulty breathing, and a continuous violent cough.

15. Mr. O'Donnell shouted for Defendant Miller to shut down the ventilation system to stop the chemicals spreading to his cell. Defendant Miller ignored him.

16. Mr. O'Donnell asked Defendant Miller and other members of the cell extraction team to give him a shower, medical attention, access to fresh air, and new clothing, among other means of decontamination, to relieve the suffering he was experiencing from exposure to the chemical agents.

17. ODOC policy requires officers to offer a shower and other means of decontamination to an inmate who was exposed to chemical agents as soon as possible after the situation is under control.

18. Later that night, Mr. O'Donnell pressed an intercom button in his cell to contact corrections staff to ask for a shower and other means of decontamination. No one responded to him.

19. After the cell extraction and deployment of chemical agents, Defendants Deranleau, Hudson, and Muhlbeier walked through the unit at different points. Mr. O'Donnell asked each of them for a shower, new clothing, and other means of decontamination. None of them helped him. Defendants Hudson and Muhlbeier mocked him for asking for help.

20. Mr. O'Donnell did not receive a shower that night. He did not receive a shower until his next regularly scheduled shower on October 25, 2020, approximately three days after he was first exposed to the chemical agents.

21. During the hours and days Mr. O'Donnell waited for a shower, he continued to experience pain, a burning sensation, coughing, and difficulty breathing. He had no other adequate means of decontamination available to him during that time.

22. Defendants Miller, Hudson, and Muhlbeier believed that other inmates in the unit had provoked the inmate in cell 142 to cover the windows to his cell. Defendants refused to

allow Mr. O'Donnell a shower or other means of decontamination because they wanted to punish him and other inmates in the unit for their perceived role in causing the cell extraction.

23. At the time that this incident occurred, TRCI had at least 94 confirmed cases of COVID-19 within the prison. COVID-19 is a serious respiratory disease spread through coughing and other exposure to bodily fluids. Defendants used chemical agents known to cause coughing and respiratory distress despite the ongoing COVID-19 pandemic and the knowledge that the respiratory disease was spreading within TRCI.

24. Each of the named individual defendants was aware of the painful effects of OC spray, and of the particularly painful effects of the Phantom brand of OC spray.

### Supervisor Liability Allegations

25. Defendant Jackson and is liable for the actions of the above-named Defendants in a supervisory capacity.  At all times, Defendant Jackson was aware of the pain and suffering that inmates experience when denied the opportunity to decontaminate after exposure to OC spray. For at least 12 months prior to this incident, Defendant Jackson was aware of previous complaints from inmates who were denied the opportunity to decontaminate after exposure to chemical agents.

26. Defendant Jackson's responsibilities during the incident described in this Complaint included but were not limited to training and supervising TRCI security staff. These responsibilities including training and supervising security staff regarding appropriate use of force against prisoners and providing appropriate and necessary means of decontamination to inmates exposed to chemical agents.

27. Defendant Jackson failed to train and supervise TRCI staff to provide necessary decontamination to inmates who had been exposed to OC spray.

## CLAIMS FOR RELIEF

27. Plaintiff brings claims under 42 USC § 1983, for violations made by the named Defendants, of Mr. O'Donnell's Eighth Amendment rights to be free from cruel or unusual punishment. He also brings state negligence and intentional infliction of emotional distress claims against the Oregon Department of Corrections.

28. The Defendants are all persons within the meaning of 42 U.S.C. § 1983.

29. Plaintiff seeks an award of economic damages, non-economic damages, punitive damages where appropriate, attorney fees and litigation expenses/costs against defendants.

### CLAIM 1: VIOLATION OF CIVIL RIGHTS [42 U.S.C. § 1983]
### EIGHTH AMENDMENT
### (Deliberate Indifference to Medical Needs— Individual Liability)

30. Mr. O'Donnell restates and incorporates here the allegations in all preceding paragraphs.

31. Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel and unusual punishments." A "cruel and unusual punishment" could include deliberate indifference to a prisoner's serious medical needs.

32. Defendants were well aware of the pain and anxiety suffered by inmates who are exposed to OC spray or similar chemical agents.

33. Defendants Miller, Deranleau, Hudson, and Muhlbeier were deliberately indifferent to Mr. O'Donnell's serious medical needs in failing to provide Mr. O'Donnell with a shower, new clothing, or other means of decontamination at the earliest available opportunity, or at all, knowing that he was exposed to OC spray and in pain.

34. Defendant Jackson was deliberately indifferent to Mr. O'Donnell's serious medical needs in failing to adequately train, discipline, control, and supervise TRCI staff regarding the use of OC spray, including proper decontamination methods.

### CLAIM 2: STATE TORT CLAIM
(Negligence – Against Oregon Department of Corrections)

35. Mr. O'Donnell restates and incorporates here the allegations in all preceding paragraphs.

36. Defendant Oregon Department of Corrections, acting by and through its employees and agents, was negligent in one or more of the following ways:

   a. In failing to exercise reasonable care to protect those in its custody, including Mr. O'Donnell, from the unreasonable risk of harm of using chemical agents during a cell extraction without taking precautions to ensure those chemical agents did not enter neighboring cells; and

   b. In unreasonably ignoring its own responsibilities and regulations by failing to provide Mr. O'Donnell with a shower, new clothing, or other means of decontamination after defendant's employees exposed him to chemical agents.

37. As the corrections agency holding Mr. O'Donnell in custody, Defendant had a special relationship with Mr. O'Donnell and owed him a heightened duty of care. This duty included protecting him from foreseeable harms arising in TRCI.

38. Defendant's agents and employees knew or should have known that their acts or omissions would result in a foreseeable risk of harm and suffering to Mr. O'Donnell. Because of this foreseeable risk, Defendant owed Mr. O'Donnell the reasonable care and duty of not exposing him to such harm.

39. Defendant's agents' and employees' conduct was unreasonable in light of the risk of harm to Mr. Smith and resulted in the aforementioned harm.

40. As a direct result of the actions and omissions of Defendant ODOC, Mr. O'Donnell experienced pain, suffering, emotional distress. Mr. O'Donnell is entitled to compensatory and pecuniary damages in an amount to be determined at trial.

41. Notice as required by the Oregon Tort Claims Act was provided to defendant ODOC within the statutorily prescribed time frame.

### CLAIM 3: STATE TORT CLAIM
(Intentional Infliction of Emotional Distress – Against Oregon Department of Corrections)

42. Mr. O'Donnell restates and incorporates here the allegations in all preceding paragraphs.

43. In mocking Mr. O'Donnell and ignoring his requests for help for relief from the pain and difficulty breathing he was experiencing, Defendant Oregon Department of Corrections (ODOC)'s employees, including Defendants Miller, Muhlbeier, and Hudson, intended to inflict severe mental or emotional distress on Mr. O'Donnell; or that distress was substantially certain to result from their conduct;

44. As a direct result of the above-described actions of Defendant ODOC and its employees, Mr. O'Donnell experienced severe emotional distress.

45. The actions of Defendant ODOC and its employees, in mocking Mr. O'Donnell and refusing to provide relief to him when he was entirely subject to their custody and care, were an extraordinary transgression of the bounds of socially tolerable conduct.

46. Mr. O'Donnell is entitled to compensatory and pecuniary damages in an amount to be determined at trial.

47. Notice as required by the Oregon Tort Claims Act was provided to defendant ODOC within the statutorily prescribed time frame.

## DEMAND FOR JURY TRIAL

48. For all claims alleged in this Complaint, Plaintiff demands a jury trial.

## REASONABLE ATTORNEY'S FEES AND COSTS

49. 42 U.S.C. § 1988(b) allows "the prevailing party… a reasonable attorney's fee as part of the costs…" in an action brought under 42 U.S.C. § 1983.

50. Plaintiff requests that the Court grant a reasonable attorney's fee in this action.

## CONCLUSION

WHEREFORE, plaintiff prays for relief as follows:

a. For judgment in favor of Mr. O'Donnell against Defendants for his economic and non-economic damages;

b. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

c. For such other and further relief as may appear just and appropriate.

DATED: October 21, 2022.

*/s/ Alex Meggitt*
Alex Meggitt, OSB #174131
P.O. Box 5248
Portland, OR 97208

Attorney for Plaintiff