**Jonathan Gersten**, OSB #191582
Oregon Justice Resource Center
P.O. Box 5248
Portland, OR 97208
jgersten@ojrc.info
Tel: (503) 944-2270
Fax: (971) 328-3982

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PENDLETON DIVISION

| | |
|---|---|
| KEVIN O'DONNELL,<br><br>Plaintiff,<br><br>v.<br><br>OREGON DEPARTMENT OF CORRECTIONS, KEVIN JACKSON, NICHOLAS DERANLEAU, CLYDE G. MILLER, TRAVIS HUDSON, and TYLER MUHLBEIER,<br><br>Defendants. | Case No. 2:22-CV-01617-AR<br><br>PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR**

**SUMMARY JUDGEMENT**

Plaintiff submits this Brief in Opposition to Defendants' Motion for Summary Judgement. Plaintiff supports this brief with the deposition transcript of TRCI Grievance Coordinator Arnell Eynon and the grievances at issue. Plaintiff requests that this Court **DENY** Defendants' Motion.

I.  INTRODUCTION

Defendants cannot elude accountability through their own improper applications of the

grievance process. The PLRA's stated goal of resolving inmate disputes at the lowest level possible, *Woodford v. Ngo*, 548 U.S. 81, 89 (2006), is thwarted if prison systems use them as an end-around for escaping liability. Mr. O'Donnell took "reasonable and appropriate" steps to grieve his issue. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010). Defendants cannot prevail if they denied Plaintiff an adequate remedy through their own mishandling of his grievance. *See Sapp v. Kimbrell*, 623 F.3d 813, 823-24 (9th Cir. 2010).

## II. SUMMARY OF FACTS

On October 22, 2020, Mr. O'Donnell was housed in the Disciplinary Segregation Unit (DSU) at TRCI. That evening, Defendants Miller, Hudson, and Muhlbeier led a "cell extraction" in a nearby cell spraying large quantities of OC spray into that nearby cell. The chemical agents cycled through the air causing Mr. O'Donnell to be exposed to the OC spray from within his cell. For several days, Mr. O'Donnell requested decontamination from the exposure to the chemical agents but was denied. Mr. O'Donnell did not receive a shower until his next regularly scheduled shower on October 25, 2020, which was approximately three days after his exposure to the chemical agents.

On October 25, 2020, Mr. O'Donnell submitted Grievance # TRCI-2020-10-153, which was received by the TRCI Grievance Office on October 27, 2020. Decl. Eynon, 5-6, Dkt. 37-5. In his grievance, Mr. O'Donnell writes,

> On 10/22/2020 at 2150 hours a cell extraction occurd [sic] in DSU Section 6 cell 144-top tier. I am located in the same section in cell – 142. At 2150 hours SGT. Miller deployed O.C. Spray from a riot canister which filled the cell of 144. SGT. Miller refused to have the air vents shut down due to his action I was also effected [sic] by the spray of O.C. [. . .] I yelled out my door to SGT. Miller but my words fell on deaf ears. I told SGT. Miller I was in need of Medical attention. All Mr. Miller said was for his staff to open section 6 yard door. I pleaded with SGT. Miller to allow me to shower but was denied that opportunity to do so. I have been denied a shower from 10/22/2020 till 10/25/2020 @ around 1400 hours I was allowed to

> shower/change clothes. SGT. Miller refusing to allow me to shower and change clothes also violates the law which states "Once chemical agents have been used, Prisoners (including bystandards [sic] who have been exposed) must be allowed a reasonable opportunity for decontamination." I have never been in that much pain in my life. Nor do I ever want to go through it again. SGT. Miller never returned to DSU Section-6 after departing from the unit @ 2155 hours. I pushed my emergency button located at the back of cell it was never answered. These actions of SGT. Miller is [sic] unacceptable and causes a risk to the safty [sic] and security of the institution of the Oregon Department of Corrections. All I wanted to do was be decontaminated from the second hand exposer [sic] of the O.C. spray [. . .].

*Id.* Mr. O'Donnell's grievance was stamped as "DENIED" by the TRCI Grievance Office on November 3, 2020, and the TRCI Grievance Coordinator, Arnell Eynon, sent Mr. O'Donnell a "Grievance – Denied" letter on November 16, 2020. *Id.* at 5-6, 4. In the November 16th letter, Ms. Eynon writes,

> This grievance is denied as you have not met the requirements under 291-109-0210. You have not demonstrated misapplication of departmental policies, rules or other directives, unprofessional actions of department employees, volunteers, or contractors, inadequate medical or mental health treatment. [sic] sexual abuse or sexual harassment or excessive use of force by department employees.

*Id.* at 4.

Two days later, on November 18, 2020, Mr. O'Donnell submitted a Grievance Appeal Form, which was received by the TRCI Grievance Office on November 19, 2020. *Id.* at 2. In the Grievance Appeal From, Mr. O'Donnell writes,

> I don't agree with the response from my initial grievance. I stated the problem. I gave you dates and times. I said what the staff response was. I stated the unprofessional acts of the staff. I was denied medical attention. My Emergency button was refused (no answer) I was in serious pain and tried to be treated but was denied. [. . .]

*Id.* The TRCI Grievance Office stamped Mr. O'Donnell's Grievance Appeal Form as "DENIED" on November 25, 2020. *Id.* On December 8, 2020, Grievance Coordinator Eynon sent Mr.

O'Donnell an "Initial Appeal – Denied" letter stating, "The grievance rule does not permit a returned grievance or grievance appeal to be appealed. Therefore, this appeal is denied." *Id.* at 1.

### III. ARGUMENT

#### a. Exhaustion of Administrative Remedies

##### i. Standard of Review

A prisoner's failure to exhaust administrative remedies under the Prisoner Litigation Reform Act (PLRA) "is an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). In *Albina v. Baca*, 747 F.3d 1162, 1166 (2014), the Ninth Circuit overruled *Wyatt v. Tehune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which held that a failure to exhaust should be raised by a defendant as an "unenumerated Rule 12(b) motion," and should be handled by a motion for summary judgment as follows:

> If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts.
> *Albina*, 747 F.3d at 1166.

If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits. *Id.* At 1171.

##### ii. OAR 291-109-0100 *et seq.*

OAR 291-109-0100 *et seq.* establishes ODOC's "internal grievance review and appeal system to AICs confined in Department of Corrections facilities." OAR 291-109-0100. Under the OARs, an AIC's initial grievance will face two rounds of scrutiny; first, what amounts to a pleading stage, and second, a review of the grievance on the merits.

At the pleading stage, AICs must properly fill out the ODOC-provided grievance form and

"include a complete description of the incident or issue being grieved, including date and time of the incident or issue being grieved, and the individual responsible for the incident or issue." OAR 291-109-0220(4). Once an initial grievance has been timely submitted, the institution grievance coordinator can do one of two things based on the information in the grievance: accept the grievance, OAR 291-109-0225(1), or return the grievance for correction, OAR 291-109-0225(2).[1] Once a grievance is accepted, it is forwarded to the appropriate staff member for review and response on the merits. OAR 291-109-0225(1). Grievances that are returned for correction may be resubmitted to comply with the pleading standards. OAR 291-109-0225(2). However, the OARs do not provide an opportunity for AICs to resubmit a denied grievance. *See generally* OAR 291-109.

> OAR 291-109-0210 details permissible grievance issues. It explains:
>
>> (3) An AIC may file a single grievance concerning any incident or issue regarding institutional life that directly and personally affects that AIC, *including but not limited to*:
>> (a) Misapplication of departmental polices, rules, or other directives;
>> (b) Unprofessional actions of employees, volunteers, or contractors of the Department of Corrections or Oregon Corrections Enterprises;
>> (c) Inadequate medical or mental health treatment;
>> (d) Sexual abuse or sexual harassment; and
>> (e) Excessive use of force by department employees.
>
> OAR 291-109-0210(3) (emphasis added).[2]

### iii. Plaintiff Exhausted All Available Remedies.

The Ninth Circuit held in *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2004), that "the statutory language [of 42 U.S.C. § 1997e] does not require exhaustion when *no* pertinent relief can be

---

[1] *See infra* note 3.
[2] Since Mr. O'Donnell's filing of this suit, ODOC has adopted new administrative rules that re-enumerated and struck some of these available grieveable topics. The quoted language was in effect at the time of the incident alleged in Plaintiff's complaint.

obtained through the internal process." *Id.* At 935 (emphasis in original). "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'" *Id.* (emphasis in original). Accordingly, and because failure to exhaust is an affirmative defense, "a defendant must demonstrate that pertinent relief remained available." *Id.* at 936-37. If that burden is met, then Plaintiff must "come forward with evidence showing that there is something in [his] particular case that made the existing and generally available administrative remedies effectively unavailable to [him]." *Albino*, 747 F.3d at 1172. "Confusing or contradictory information given to a prisoner is pertinent to the analysis because it informs [the] determination of whether relief was, as a practical matter, 'available.'" *Bond v. Oregon, et al.*, 2017 WL 3184186, *4 (D. Or. 2016), citing *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005) (internal quotations omitted).

Below, Plaintiff discusses this issue in two parts. At both junctures, Plaintiff demonstrated that he properly utilized the grievance system to the greatest extent he could and exhausted all available remedies. First, ODOC mishandled the initial grievance review process, and second, ODOC improperly denied Mr. O'Donnell's grievance thereby denying him an "available" remedy. Ultimately, Mr. O'Donnell utilized the administrative review process to the best of his ability.

1. <u>ODOC mishandled the initial grievance review making Mr. O'Donnell's administrative remedies plainly unavailable.</u>

"[I]mproper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA. If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). "It is not necessary for the prisoner to show that prison officials acted in bad faith or deliberately obstructed the inmate from exhausting administrative remedies. Even an innocent mistake can render administrative remedies effectively

unavailable." *Bond v. Oregon, et al.*, 2017 WL 3184186, *5 (D. Or. 2016), (citing to *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010)).

In her deposition, TRCI Grievance Coordinator Arnell Eynon explained that when she receives a grievance, she has the discretion to do one of three things: accept it, deny it, or return it for correction. Arnell Eynon Dep. 13:24-14:2, 15:4-21.

At this initial pleading stage of the grievance process and as described above, OAR 291-109-0225 allows the grievance coordinator to either accept it or return it for correction. OAR 291-109-0225 does not permit the grievance coordinator to outright deny a timely grievance based on a plain reading of the grievance. To deny or otherwise close an AIC's grievance at this stage, the grievance coordinator would have to find information beyond the four corners of the grievance.[3] None of the subsections allowing the grievance coordinator to close the grievance at this initial stage apply in Mr. O'Donnell's case.

Mr. O'Donnell's initial grievance was denied, not returned for correction, because he had "not met the requirements under 291-109-0210." Decl. Eynon, 4, Dkt. 37-5; Eynon Dep. 23:11-14. Yet, OAR 291-109-0225 does not permit the grievance coordinator to deny a grievance for this reason. If the grievance coordinator believed that Mr. O'Donnell's grievance did not allege a misapplication of an ODOC rule, policy, or directive, Ms. Eynon's only option would have been to return the grievance to Mr. O'Donnell for correction. That did not happen here.

Ms. Eynon explained in her deposition that Mr. O'Donnell could have rewritten the denied

---

[3] *See* OAR 291-109-0225. A timely grievance can be closed: if the "grievance coordinator determines the AIC has pursued their issue through state or federal courts," OAR 291-109-0225(3); if "an AIC's request for resolution is granted, DOC may, in its sole discretion, discontinue further processing of the grievance," OAR 291-109-0225(5); "if an AIC has filed a Notice of Tort Claim [. . . ], DOC may, in its sole discretion, discontinue further processing of the grievance," OAR 291-109-0225(6); or "if a grievance [. . .] is received [. . .] after the AIC has released from the custody of the Department of Corrections, the complaint [. . .] will not be processed," OAR 291-109-0225(8). In all four of these categories, the grievance coordinator would need specific information outside the four corners of the grievance in order to deny the grievance at this stage.

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

grievance, but rewriting a denied grievance is not permitted under the OARs.

> A. If I read it and do not know that they have more information and I deny it, the AIC can still rewrite it, resubmit it, and have it rereviewed for consideration.
> Q. And that could happen even if there is an outright denial?
> A. Yes. That's correct.
> Q. Okay. And do you explain to AICs that they are able to resubmit [the grievance] after a denial?
> A. I do not recite the entire grievance rule to AICs in my communications, but the receipt that they are given does instruct them that if they have any questions, that they can re – review the Department of Corrections administrative rule for grievance review system tab 109 in the legal library or [kyte] me for further questions.

Eynon Dep. 18:21-19:11. If Mr. O'Donnell would have consulted the Department of Corrections administrative rule for the grievance review system (OAR 291-109) as she suggested, he would have found that the rule does not allow for an AIC to resubmit a grievance that has been denied. As explained above, only grievances that have been returned for correction are allowed to be resubmitted. OAR 291-109-0225(2).

Ms. Eynon's mistaken assumption that she could outright deny a grievance at this stage for failing to allege a misapplication of an ODOC rule, policy, or directive was an obstruction of Mr. O'Donnell's ability to fully exhaust his administrative remedies. Because Mr. O'Donnell's initial grievance was improperly screened, administrative remedies were plainly unavailable to him such that exhaustion is not required under the PLRA.

2. <u>ODOC improperly denied a legally sufficient grievance.</u>

The content of a grievance is sufficient if it "alerts the prison to the nature of the wrong for which redress [wa]s sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). "In the Ninth Circuit, an inmate can also show that an administrative process was effectively unavailable by demonstrating that they took 'reasonable and appropriate steps to exhaust' but were prevented from doing so because of the action of prison officials." *Gomez v. Peters, et al.*, USDC of Or. Case

No. 2:18-cv-01607-HZ, 2020 WL 7647470, *4 (D. Or. 2020) (citing *Benson v. Peters*, No. 2:14-CV-00132-CL, 2016 WL 259701, at *4 (D. Or. Jan. 20. 2016)) (internal quotes omitted); *see also Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010). "A mistake by prison officials can render such remedies unavailable if said mistake 'prevents the inmate from 'pursuing the necessary sequence of appeals.''" *Id.* (quoting *Sapp*, 623 F.3d at 823) (brackets omitted). Similar to *Gomez*, where a plaintiff's grievance was denied despite being abundantly clear in its statement of a rule violation, Mr. O'Donnell's grievance was improperly denied. *Id.* At *5.

Mr. O'Donnell's initial grievance was denied because it "did not demonstrate misapplication of department rule, policy, or directive." Eynon Dep. 23:11-14. Under the plainest of readings of Mr. O'Donnell's grievance dated October 25, 2020, he clearly stated concerns under the categories enumerated in OAR 291-109-0210. In his initial grievance, Mr. O'Donnell stated the time, date, location of the incident, and name of the staff member involved. Decl. Eynon, 5-6, Dkt. 37-5. Several statements in the grievance amount to violations that OAR 291-109-0210 deems permissible grievance issues, including "SGT. Miller refused to have the air vents shut down due to his action I was also effected [sic] by the spray of O.C."; "I yelled out my door to SGT. Miller but my words fell on deaf ears. I told SGT. Miller I was in need of Medical attention"; "I pushed my emergency button located at the back of cell it was never answered"; and "All I wanted to do was be decontaminated from the second hand exposer [sic] of the O.C. spray." *Id.* Mr. O'Donnell even quoted his understanding of ODOC's chemical agent decontamination policy; he wrote, "SGT. Miller refusing to allow me to shower and change clothes also violates the law which states 'Once chemical agents have been used, Prisoners (including bystandards [sic] who have been exposed) must be allowed a reasonable opportunity for decontamination.'" *Id.* To Ms. Eynon, this was not enough to signal that a violation of an ODOC policy, rule, or directive was alleged:

> Q. I am trying to get at how you would assess whether there was or was not a rule clearly stated in the grievance, and to me the quotation marks seem to indicate there was a rule violation. So how did you make a determination back then that no rule was clearly stated?
> A. Because it doesn't state that this is a rule. I don't know why the AIC used quotation marks. In fact, if you turn back to the bottom of page 1, the AIC refers to it as the law.

Eynon Dep. 27:21-28:5.

Ms. Eynon explains that even though she denied Mr. O'Donnell's grievance, she could have researched whether a rule was alleged to be violated, and whether she does that research is completely up to her discretion.

> Q. Okay. A few questions in response to your last answer. Are you familiar with all of the Department of Corrections policies, rules, and directives?
> A. I – I would have to research them. I am not a hundred percent at all times familiar with all of them.
> [. . .]
> Q. How would you make a determination [. . .] that the grievance states that there was a misapplication of a policy or rule?
> A. I would probably look into it a little further, ask – I might ask questions or research the – if the AIC, you know, lists a rule they are alleging was violated, I may look that up. That is just kind of a case by case –
> Q. So do you always do that or not necessarily?
> A. Well, not necessarily, because some of it is based on my knowledge or my – my judgment when I read it. If I feel it calls for that or it needs that, then I do that.

Eynon Dep. 24:1-7, 25:2-16.

Despite Mr. O'Donnell's extensive initial grievance, Ms. Eynon did not reach out to him to clarify any questions she had, she did not research the rules he alleged staff had violated, and she did not return the grievance for correction. In fact, Ms. Eynon even explained that if she would have received this grievance today, she would have allowed Mr. O'Donnell to get an answer to his concerns.

> Q. Okay. So in reading it now, having just reviewed it again, do you see any issues that would cause you to deny this outright?
> A. So our – if I received this today, **I likely would not deny this outright**

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
Page 10

        **given a little additional training that we have had in the last four years regarding this topic.** Additionally so, I'm seeing another reason in here that could have caused an additional issue but wasn't necessarily noted back to the AIC.

        So if I were to receive this today, I may approach this one a little bit differently.

Q.    Okay. So how so? How would you approach it differently?

A.    I would probably just err on the side of allowing the AIC to get his answer to the concerns.

Eynon Dep. 20:15-21:5 (emphasis added).

Mr. O'Donnell's grievance was sufficient because it alerted the prison to the nature of the wrong for which redress was sought. Mr. O'Donnell successfully listed time, date, location of the incident, and name of the staff member involved, as well as several incidents that would give rise to a misapplication of an ODOC rule, policy, or directive. Mr. O'Donnell was thwarted from taking any further reasonable and appropriate steps to exhaust because of Ms. Eynon's improper denial of his grievance.

3. <u>Mr. O'Donnell reasonably believed his administrative remedies had been exhausted.</u>

Because Mr. O'Donnell's initial grievance had been denied—and not returned for correction—he reasonably assumed that his administrative remedies had been exhausted. Despite this, he still sought assistance through the administrative review process by appealing the denial of his initial grievance. Mr. O'Donnell's initial appeal was denied because "[t]he grievance rule does not permit a *returned* grievance or grievance appeal to be appealed. Therefore, this appeal is denied." Decl. Eynon, 1, Dkt. 37-5 (emphasis added). The appeal denial letter improperly states the rule as applied to Mr. O'Donnell's case because his initial grievance was not *returned* rather it was outright denied. Despite his best efforts to seek redress from the prison, the grievance coordinator improperly denied his grievance and mishandled the grievance appeal process.

    b.   **Defendants' Eleventh Amendment Immunity**

      i. **Individual Defendants**

"Where state officials are named in a complaint which seeks damages under 42 U.S.C. § 1983, it is presumed that the officials are being sued in their individual capacities." *Shoshone-Bannock Tribes v. Fish & Game Com'n, Idaho*, 42 F.3d 1278 (9th Cir. 1994). In Plaintiff's complaint, each individual Defendant is alleged as follows, "At all times alleged, Defendant [NAME] was acting under color of law, and is being sued in his individual capacity." Compl., Dkt. 1, ¶¶ 4-9.

Defendants demand in their Motion for Summary Judgment that the claims against the individual defendants in their official capacity be dismissed. As written in Plaintiff's complaint, each Defendant is plainly listed as being sued in their individual capacity. There are no claims in the Defendants' official capacities to be dismissed. To the extent, this Court finds Plaintiff's complaint unclear as to whether Defendants are being sued in their individual or official capacity, the Court must presume Defendants are being sued in their individual capacities.

      ii. **Oregon Department of Corrections**

As explained in this brief, Plaintiff has met his obligation to exhaust his administrative remedies under the PLRA. If this Court decides to grant Defendants' Motion as to the state tort claim, the Court should limit its ruling to a jurisdictional finding and not a ruling on the merits of the claims. To the extent the Court dismisses Plaintiff's claim, it should be a dismissal without prejudice. In the event the claims are dismissed on procedural grounds, Plaintiff reserves the statutory right to refile the state tort claims in state court pursuant to ORS 12.220.

///

///

///

## CONCLUSION

For the reasons described above, Defendants have not met their burden in their Motion for Summary Judgment. Accordingly, Defendants' Motion must be **DENIED**.

DATED October 8, 2024.

*/s/ Jonathan Gersten*
Jonathan Gersten, OSB #191582
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208

Attorney for Plaintiff